UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


SHERRIE M. LEEPER,                      )
                                        )
       Plaintiff                      )
                                        )
v.                                      )      No. 2:10-cv-260-DBH
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
       Defendant                      )


# REPORT AND RECOMMENDED DECISION[1]

In this Supplemental Security Income ("SSI") appeal, the plaintiff contends that the administrative law judge should have found that a combination of mental impairments constituted a severe impairment, gave improper weight to the opinions of her treating physician and mental health providers, and failed to consider the effect of her obesity on her other impairments. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 415.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from asthma largely controlled with medication, degenerative joint disease of the knees, an affective disorder, and obesity, impairments that were severe but which, considered alone or together, did not meet

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 14, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

or equal the criteria of any of the impairments included in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 2-3, Record at 9-10; that she had the residual functional capacity ("RFC") to perform light work, except that she was limited to only two hours of combined standing or walking in an eight-hour day, could never balance and could only occasionally stoop, crouch, kneel, or crawl, should never climb ladders, ropes, or scaffolds, could only occasionally climb stairs, should avoid extremes of temperature, fumes, or odors, and might find that her affective disorder interfered with her adaptation to more than occasional changes in the work place, Finding 4, *id*. at 10; that she was capable of performing her past relevant work as an office manager "as she describes it," Finding 5, *id*. at 14; and that the plaintiff had, therefore, not been under a disability, as that term is defined in the Social Security Act, at any time from the alleged date of onset, May 22, 2008, through the date of the opinion, Finding 6, *id*. at 15. The Decision Review Board failed to review the decision in the time allowed, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential evaluation process. At Step 4, the claimant bears the burden of proving inability to return to past relevant work. 20 § 416.920(f)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner

must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 416.920(f)); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The appeal also implicates Step 2. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## Discussion

### A. Mental Impairments

The plaintiff first contends that the administrative law judge should have found that "the combination of plaintiff's mood disorders, PTSD, and anxiety" constituted a severe medical impairment. Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") Docket No. 11) at [3]. The "combination" of these impairments is not discussed further, beyond its mention in the title of this section of the itemized statement. I will treat each identified impairment separately, because I cannot discern, and the plaintiff has not explained, how the combination of these impairments would rise to a severe level, if none of the impairments, considered separately, would do so.

3

The administrative law judge found that the plaintiff suffered from an affective disorder, Record at 9, which is a mood disorder. *Maloon v. Social Sec. Admin. Com'r*, No. 1:09-cv-251-JAW, 2010 WL 3274712, at *3 (D. Me. Aug. 16, 2010). She stated both that this impairment was severe, Record at 9, and that it was not, *id.* at 10. The plaintiff does not specify any other mood disorder from which she contends that she suffered and that the administrative law judge should have found to exist, but she does mention the "not severe" statement about the affective disorder. Itemized Statement at [3]. If the administrative law judge may be deemed to have found this impairment not to be severe, an unlikely conclusion given the formal finding in bold-faced type that it was severe,[2] and that may be deemed to be error, the error is harmless, because the impact of the affective disorder is included in the RFC assigned to the plaintiff by the administrative law judge. Finding 4, Record at 10. In any event, the plaintiff does not specify how the affective disorder "significantly reduce[d] her residual functional capacity," Itemized Statement at [6], and that omission means that the court cannot determine whether the alleged error would be enough to require remand.[3] *See Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).

At Step 2 of the sequential review process, only medical evidence may be used to support a finding that a particular impairment existed. 20 C.F.R. § 416.908; *see Nolan v. Astrue*, Civil No. 09-323-P-H, 2010 WL 2605699, at *2 (D. Me. June 24, 2010); Social Security Ruling 85-28, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 393. Medical evidence must come from an acceptable medical source. 20 C.F.R. § 416.913(a). Acceptable medical sources relevant to this claim are licensed physicians and licensed or certified

---

[2] In addition, the administrative law judge stated that "I have also considered the claimant's impairments under medical listing 12.04 for an affective disorder." Record at 10.
[3] At oral argument, counsel for the plaintiff acknowledged that the claimant had not informed the administrative law judge that she claimed anxiety as a severe impairment and that the plaintiff does not rely on anxiety as a basis for remand.

psychologists. *Id*. The record evidence cited by the plaintiff in this section of her itemized statement, Itemized Statement at [4]-[5], comes only from a licensed clinical social worker and a nurse practitioner. Record at 331, 343, 427, 447, 474, 579. For that reason alone, the plaintiff takes nothing by this argument.

In addition, each of the excerpts from the record cited by the plaintiff in this section of her itemized statement recounts the plaintiff's own, subjective statements to the recording provider about her symptoms. 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."). For this reason as well, the plaintiff has not established any basis for remand with regard to this issue.

Finally, there is no indication in the record that any acceptable medical source concluded that the enumerated mental impairments, in combination, created a severe impairment. Indeed, the only Psychiatric Review Technique Form in the record that was filled out by an acceptable medical source, a state-agency psychologist, concluded that the plaintiff's mental impairments were not severe, Record at 384. This also defeats the plaintiff's challenge on this issue, as presented.

### B. Reports of Dr. Wilson and Mental Health Care Providers

The plaintiff next contends that the administrative law judge erred by giving "little to no weight to the opinions of Geniene Wilson, MD, Plaintiff's primary care physician, and the opinions from the Plaintiff's treating psychiatric counselor and psychiatric nurse practitioner, Anne Marie Mullins, LCSW, and Rebecca Lathrop, NP." Itemized Statement at [6].

As the plaintiff admits, *id*. at [7]-[8], her mental health care providers were not acceptable medical sources, and, therefore, their reports can only be considered as evidence of the severity

5

of a mental impairment that has been established by evidence from one or more acceptable medical sources. As I have already concluded, the plaintiff has not identified any such evidence in the record. To the extent that the administrative law judge's opinion may reasonably be construed to find that the plaintiff suffered from a severe mental impairment of an affective disorder, the plaintiff has not tied to that particular impairment any of the conclusions of these providers upon which she relies. Nothing in Social Security Ruling 06-03p, or *Dumensil v. Astrue*, Civil No. 10-cv-060-SM, 2010 WL 3070107 (D.N.H. Aug. 4, 2010), the only authority cited by the plaintiff in this regard, requires a different conclusion.

The Ruling is entitled "Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies," Social Security Ruling 06-03p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2010-2011), at 328. It states that, before discussing how to treat evidence from sources other than acceptable medical sources, "we need evidence from 'acceptable medical sources' to establish the existence of a medically determinable impairment." *Id*. at 329. That is the point here. In the *Dumensil* case, the ruling was based on the administrative law judge's failure to explain why he rejected a report of a treating physician assistant that "reached very different conclusions than those of the non-examining state agency physician" that was credited. *Dumensil*, 2010 WL 3070107 at *4-*5. That issue is not presented in this case.

With respect to Dr. Wilson's opinions, the plaintiff relies only on her statements that "the Plaintiff has been unable to work since May 6, 2008," which she asserts "are wholly consistent with and supported by the medical records[.]" Itemized Statement at [7]. The question of whether a claimant is unable to work is reserved to the commissioner, 20 C.F.R. § 416.927(e)(1)-

(3) ("We will not give any special significance to the source of any opinion on issues reserved to the Commissioner[.]"), and, as this court has said repeatedly, a treating physician's opinion on this issue need not be adopted by the administrative law judge. *E.g., King v. Astrue*, Civil No. 09-337-P-H, 2010 WL 4457447, at *4 (D. Me. Oct. 31, 2010).

The plaintiff takes nothing from this challenge.

### C. Effect of Morbid Obesity

Finally, the plaintiff contends that the administrative law judge impermissibly failed to consider the effect of her morbid obesity on her other impairments. Itemized Statement at [10]-[12]. She asserts that her "obesity has to be considered a severe impairment[,]" *id*. at [11], and that is exactly what the administrative law judge did. Record at 9. The administrative law judge stated that "[t]here is no specific [L]isting for obesity but I have considered this as an aggravating factor to her asthma and to her knee pain. I have also considered her obesity in determining non-exertional limitations." *Id*. at 10.

Later, the administrative law judge said the following:

> At the hearing, the claimant testified that she currently weighs 410 pounds and is 5"6" tall. . . . [A motor vehicle accident in 2003] combined with her weight and subsequent diagnosis of degenerative joint disease in the bilateral knees[] has made it difficult for her to climb stairs or walk for long.
> * * *
> The claimant's weight was documented in July 2008 as 323#, which her physician considered morbidly obese (Ex. 9F). Her weight was taken as part of her pulmonary function tests in November 2008. At the time, the claimant weighed 325# (Ex. 11F pg.2). In September 2009, the claimant was referred for her first session to discuss bariatric surgery. At the time, she weighed 415 pounds. She was advised that she would need to lose 77 pounds before bariatric surgery would be considered (Ex. 30F pg 7). . . .
>
> The claimant was advised [by Dr. Howard Parker] to lose weight[.]

Record at 11-12.

7

The RFC assigned to the plaintiff by the administrative law judge includes limitations to "only two hours of combined standing or walking in an eight-hour day," no balancing, only occasional stooping, crouching, kneeling or crawling "due to limited range of motion related to her obesity[,]" no climbing of ladders, ropes, or scaffolds, and only occasional climbing of stairs. *Id*. at 10.

The plaintiff asserts that the administrative law judge "fail[ed] to conduct [the] evaluation" required by Social Security Ruling 02-1p, considering the impact of her obesity on her other impairments [asthma and degenerative joint disease of both knees] to analyze whether the combined effects would support a finding that a Listing was met or equaled, and to properly develop a complete residual functional capacity of all of the exertional and non-exertional limitations that result from the combined impact of the impairments with the Claimant's extreme obesity." *Id*. at [11]. In my view, however, that this is precisely what the administrative law judge has done in her opinion. In any event, the plaintiff says nothing more about her contention that the assigned RFC does not include all of the unspecified limitations that result from the combination of asthma and degenerative joint disease with her obesity. Her initial conclusory observation is not enough to entitle this portion of her argument to further attention from this court.

The plaintiff identifies Listing 1.02(A) as the one she believes that she has met. She criticizes the administrative law judge for "believ[ing] that to meet Listing 1.02(A) both knees must satisfy the listing criteria. This is clearly wrong." *Id*. The administrative law judge noted that she

> also considered the claimant's impairments under medical listing 1.02 for degenerative joint disease in both knees. However, while the claimant has severe degenerative joint disease in the right knee, her left

8

>knee is not so affected. The claimant is able to ambulate effectively, albeit with the use of a cane in her left hand.

Record at 10. She later noted that Dr. Howard Parker "had x-rays performed of bilateral knees which showed advanced osteoarthritis of the three compartments of the right knee and in one compartment in the left knee. The claimant was advised to lose weight, take Ibuprofen as needed and to get a walking stick to help with her ambulation (Ex. 19F)." *Id*. at 12.

The cited Ruling states that

> [w]e will . . . find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. . . .
>
> For example, when evaluating impairments under mental disorder listings . . . , obesity that is "severe[]" . . . satisfies the criteria in [L]isting 12.05C for a physical impairment imposing an additional and significant work-related limitation of function[.]

Social Security Ruling 02-1p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2010-2011), at 255.

The Listing at issue provides as follows:

> 1.02 *Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02.

The definition to which the Listing refers provides as follows, in relevant part:

> b. *What We Mean by Inability To Ambulate Effectively*
>
> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk: *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. . . . Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes[.]

*Id*. § 1.00(B)(2)(b).

The administrative law judge noted, correctly, that the plaintiff was able to ambulate effectively under this definition: "albeit with the use of a cane in her left hand." Record at 10. In the absence of any evidence that the plaintiff's obesity caused her to need assistive devices involving the use of both hands in order to walk, there is no possibility that the Listing could have been met. Whether or not the administrative law judge believed, erroneously, that both knees must satisfy the Listing has no effect on this result. From all that appears, the administrative law judge properly evaluated the possibility that the plaintiff's condition met Listing 1.02(A); it did not.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum*

*and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 24th day of June, 2011.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
